BANK OF MICHIGAN *vs.* J. R. WILLIAMS.

The government of the *territory of Michigan* have the power, under the law organizing the territory, to *incorporate* a banking company.

THIS was an action of *assumpsit*, tried at the Albany circuit in February, *1828*, before the Hon. WILLIAM A. DUER, then one of the circuit judges.

The plaintiffs declared on a promissory note for $2755,51, bearing date 28th June, 1822, signed by the defendant and payable on demand to "The President, Directors and Company of the Bank of Michigan." The making of the note was acknowledged, and it was proved that the defendant had admitted that there was such an institution as the Bank of Michigan, and that he had been *president* thereof. It being insisted on the part of the defendant that the government of the *territory of Michigan* had not the power to incorporate a banking company, a verdict was entered for the plaintiffs for the balance due upon the note, subject to the opinion of this court; and it was agreed that the acts, laws and ordinances of the congress of the *United States* relating to the territory, and the laws of the territory, and also the act or law purporting to have been passed on the 19th December, 1817, entitled "an act to incorporate the stockholders of the Bank of Michigan," should be considered as forming a part of the case, and might on the argument be referred to from the book in ordinary use containing the laws of the territory.

*Michigan* was erected into a territory on the 11th January, 1805, and a government given to it in all respects similar to that established by an ordinance of congress of July 13th, 1787, erecting the territory northwest of the river Ohio, and by the act of congress of the 7th August, 1789, confirming the same. By the ordinance of the 13th July, 1787, the *legislative* authority of the territory is vested in the *governor* and *judges*, in these terms: "The governor and judges, or a majority of them, shall adopt and publish in the district such laws of the original states, criminal and civil, as may be necessary and best suited to the circumstances of the district,

and report them to congress from time to time : which laws shall be in force in the district until the organization of the general assembly therein, unless disapproved of by congress ; but afterwards the legislature shall have authority to alter them as they shall see fit." There is a further provision, that after the representative government shall have been organized, "The governor, legislative council and house of representatives shall have authority to make laws in all cases for the good government of the district, not repugnant to the principles and articles in this ordinance established and declared."

*J. Hoyt,* for plaintiffs. A *foreign* corporation may sue in our courts. 4 *Johns. C. R.* 370. 6 *Cowen,* 47. The defendant by his acts and declarations is precluded from denying the existence of the corporation. 3 *T. R.* 632. 6 *id.* 635, *n.* 2 *Serg. & Rawle,* 440. 10 *East,* 104. *Chitty on Bills,* 377. 6 *Barn. & Cres.* 240. 2 *Barn. & Ald.* 339, 670. 1 *T. R.* 1. 3 *id.* 300. *Cro. Eliz.* 756. 10 *Mass. R.* 105. *Willes,* 5, 25, 52, 103. 2 *Leon.* 11. 3 *id.* 118. *Dyer,* 196. 14 *Johns. R.* 238. 2 *Starkie's Ev.* 28 *to* 36. 4 *T. R.* 366. 6 *id.* 663. 9 *Johns. R.* 144. 1 *Binney,* 27. 1 *Campb.* 444. 2 *id.* 344. 3 *id.* 370, 108. 7 *Cowen,* 186. *Bacon's Abr. Verdict. n. Godol.* 177. The fact of the defendant's contradicting with the plaintiffs in the name in which they sue, at all events, is *prima facie* sufficient evidence that they are a public body or corporation, until rebutted by proof on the part of the defendant. 4 *Bos. & Pul.* 206. 1 *Barn. & Ald.* 677. 8 *East,* 487. 4 *Maule & Sel.* 13. 10 *East,* 104. 12 *Wheaton,* 70. The production of the charter of incorporation and the acts of *user* under it are enough to prove the existence of the corporation. 9 *Cowen,* 194. 1 *Wendell,* 555. 3 *id.* 296. The territorial government had the power to incorporate a banking company : they are authorized by the ordinance of July 13, 1787, to adopt such laws of the original states as they may deem necessary and best suited to the circumstances of the district ; which laws are to be in force unless disapproved of by the congress of

the United States. Instead of this act being disapproved of, it has been recognized by congress, 6 *Laws of U. S.* 485, and that too after the annulling of a previous act of the government of the territory creating a banking company. 4 *Laws of U. S.* 117.

*H. Bleecker & A. Van Vechten,* for the defendant. The plaintiffs suing as a *corporation,* were bound to prove themselves such under the plea of the general issue. 14 *Johns. R.* 416. 8 *id.* 378. 2 *Ld. Raym.* 1535. *Strange,* 612. *Hob.* 211. The acts and declarations of the defendant only prove the plaintiffs an association doing business as a banking company, but not as a *corporation* which can be created only by an act of the government. Were proof of this kind admissible, unincorporated banking companies could enforce their contracts notwithstanding our restraining acts ; the cases to this point cited for the plaintiffs are therefore inapplicable.

The plaintiffs failed in shewing themselves a corporation, the territorial government from whom they obtained their act of incorporation not having the power to incorporate a banking company. The coining of money or creating a substitute for it, is a prerogative of an independent state, and could not legitimately be exercised by the territorial government, which is dependant, temporary and subject to the control of the congress of the United States. That such power could not exist results as a necessary consequence from the nature of the government. Besides, its powers are temporary and limited. It can *originate* no laws, and is authorized only to *adopt* such laws of the original states, criminal and civil, as may be necessary and suited to the circumstances of the territory, for the *government* of the inhabitants ; not that they may adopt such acts of the original states as confer upon individuals franchises which can be granted only by the sovereign authority of a state, and without which grant they could not legally be exercised. Every such grant is a parting with a portion of the sovereign authority. The territorial government itself had not the franchise of banking ; how could it confer such power upon individuals ? Besides, the

ALBANY,
October, 1830.

Bank of Mich-
igan
v.
Williams.

power of new modelling the laws reserved upon the succes-
sive changes in the form of the government of the territory,
forbids the right to the territorial government in its chrysalis
state of creating a bank which of necessity must be perma-
nent to secure the rights of the stockholders of such an in-
stitution. If the act incorporating the plaintiffs was invalid,
the incidental recognition of it by congress would not give
force to it, and the disapprobation of congress was not neces-
sary to render it void.

*J. C. Spencer*, in reply. The question here is not between
the public and the corporation, but between the parties to
a contract ; and the point to be determined is whether the de-
fendant by his acts and declarations has relieved the plaintiffs
from the necessity of proving themselves a corporation in
law and in fact, as they would have been bound to do but
for those acts and admissions. The plaintiffs do not claim
the benefit of a technical estoppel, but of an estoppel *in pais ;*
relying upon the evidence produced as dispensing with proof
which otherwise, it is admitted, must have been produced.
There is nothing peculiar in the case of a *corporation* requiring
higher proof than in other cases ; a patent from the govern-
ment of lands, deeds and wills of real estate, are all proved
by the admissions of parties. *Rolle's Abr.* 864, *b*. 14. *Co-
myn's Dig. Estoppel, D.* 1.

The power conferred upon the territorial government is
general ; they may adopt such laws of the original states as
may be necessary and best suited to the circumstances of the
territory. The only limitation is that laws shall not be in-
troduced *unknown* to the original states ; but with this ex-
ception an unlimited discretion is given to adopt such laws
as the governor and judges shall conceive will promote the
convenience of the inhabitants and the prosperity of the ter-
ritory. Accordingly, the city of Detroit was incorporated,
medical societies were instituted and turnpike road companies
created. Can it be doubted that the government might in-
corporate religious societies ? and if the commerce of the
territory would be promoted by the incorporation of a bank-
ing company, why should the government hesitate to pass a
law for that purpose ? Models of laws for all those purpo-

ses were to be found in the laws of the original states, and to these the attention of the territorial government was directed by the ordinance of congress, conferring its powers and limiting its authority. The territorial government were alone to judge of the *expediency* of the laws to be adopted, 4 *Wheaton,* 415 ; 3 *Dallas,* 392 ; and when adopted, until disapproved like the laws of the colonial governments, they are in force. That the laws of the territory would be subject to be re-modelled on a change of the organization of its government, is no objection to the exercise of the power of incorporating a banking company ; for such an act, conferring rights which could not be divested, would not be affected by such change ; but were it otherwise, the stockholders taking their charter with a full knowledge of existing circumstances, would not have the right to explain.

*By the Court,* SUTHERLAND, J. It has been repeatedly decided, that a foreign corporation may sue in its corporate name, both in the courts of law and equity in this state. 1 *Johns. Cas.* 132. 16 *Johns. R.* 43. 4 *Johns. Ch. R.* 372. 4 *Cowen,* 530, *notes.* 6 *id.* 46. The same doctrine prevails in England. A suit was brought by The Dutch West India Company, in the court of common pleas, for money lent in Holland ; the objection was distinctly taken, that a foreign corporation could not sue in the English courts. It was overruled, and the judgment of that court was affirmed in the king's bench and house of lords. 1 *Strange,* 612. 2 *Ld. Raym.* 1532, 1535.

The only question in this case is whether the plaintiffs have proved themselves to be a legal valid corporation. That it was incumbent upon them to establish that fact is not denied. A corporation, when it sues, need not set forth its title in the declaration ; but it must shew, by evidence upon the trial, that it is a body politic, having legal authority to make a contract which it seeks to enforce if the action be upon a contract, or to sue in that character and capacity in which it appears in court. No principle is better settled, both in England and in this country. *Hob.* 211. 2 *Ld. Raym.* 1535. 8 *Johns. R.* 378. 14 *id.* 416. The act un-

ALBANY,
October, 1830.

Bank of Mich-
igan
v.
Williams.

der which the plaintiffs claim to exist and to exercise the ordinary powers of a banking corporation, was passed by the governor and judges of the territory of Michigan on the 19th day of December, 1817. The defendant contends that there was no power in the government of Michigan in December, 1817, to incorporate a banking company; and the case resolves itself into the inquiry whether such power did or did not exist. *Michigan* was originally embraced in the "territory of the United States northwest of the river Ohio." That territory was organized by an ordinance of congress passed the 13th day of July, 1787, 1 *Laws U. S.* 475, and on the 7th August, 1789, certain modifications of the ordinance were made which had become necessary in consequence of the adoption of the constitution, which took place after the original ordinance was passed. 2 *Laws U. S.* 33. These alterations, however, were merely formal. On the 7th May, 1800, the territory of *Indiana* was erected out of a part of the territory northwest of the Ohio, 3 *Laws U. S.* 367, with the same government as that established by the ordinance of July 13th, 1787. On the 30th April, 1802, congress made provision for the erection of what was called the eastern division of the territory, northwest of the river Ohio, into a separate state, 3 *Laws U. S.* 496; and on the 11th January, 1805, *Michigan* was taken from the northern part of Indiana and erected into a separate territory, with a government in all respects similar to that established by the ordinance of July 13th, 1787, and the act of August 7th, 1789. 3 *Laws U. S.* 632. Its organization and powers remained the same in 1817, when the act incorporating the plaintiffs was passed. We must look to the ordinance of 1787, therefore, in order to ascertain whether the government of Michigan had authority to incorporate a banking association. By that ordinance the legislative authority of the territory is vested in the governor and judges in the following terms: "The governor and judges, or a majority of them, shall adopt and publish in the district such laws of the original states, criminal and civil, as may be necessary and best suited to the circumstances of the district, and report them to congress from time to time;

ALBANY,
October, 1830.

Bank of Mich-
igan
v.
Williams.

which laws shall be in force in the district until the organiza-
tion of the general assembly therein, *unless disapproved of by
congress;* but afterwards the legislature shall have authority
to alter them as they shall see fit."

It was contended upon the argument that the original of
this act was not to be found in the laws of any of the states;
and that from the very nature of a monied corporation, the
power of creating one could not have been intended to be
conferred, as the ordinance contemplates a system of tempo-
rary legislation, to be altered or suspended whenever a legis-
lature should be regularly organized. It is undoubtedly true
that no law is to be found in any of the states " *incorporating
the stockholders of the Bank of Michigan.*" But it is also true,
that with the exception of the title of the corporation, the
place of its location, the names of the commissioners who
were to receive subscriptions to the stock, and a few other
particulars, which in the very nature of things, must be of a
local and peculiar character, the substantial provisions of this
act existed in most, if not all of the original states. It is not
an ordinary bank charter, containing no new or peculiar prin-
ciples. It purports on the face of it to have been adopted
from the laws of New-York, Ohio and Massachusetts. If
the construction contended for by the defendant be correct,
probably a valid law has never been enacted in Michigan.
There is not an act in their statute book which is a literal
transcript from the laws of any state. Every law must
have some peculiar reference to the community for which it
is designed. It necessarily purports to have been enacted
by a legislative authority representing such community, and
to be designed to operate only upon its citizens. Take that
mass of legislation which regulates the internal concerns and
police of a state or territory, which divides it into counties or
districts, provides for the election or appointment of local offi-
cers and the *organization of courts of limited local jurisdiction,*
for the laying out and working public highways, the building
of bridges and county gaols, the assessment and collection of
taxes, &c. it is evident that all these laws must have local
references which are not to be found in the laws of any other
state.

We find among the laws of this territory an act incorporating the *city of Detroit*, defining its boundaries and declaring that it shall be distinguished by the name of the *City of Detroit;* that the inhabitants of the said *city of Detroit* who are freeholders, &c. shall elect trustees, &c. Also an act establishing an University in the *city of Detroit*, by which the governor and twenty other gentlemen *named in the act*, are declared to be a body politic and corporate by the name, style and title of " *The Trustees of the University of Michigan.*" *Laws of Mich.* 443. Also an act to incorporate the Mechanics' Society *of the city of Detroit*, and a Medical Society *of Michigan;* and also a Medical Society for each county in the territory. Upon the principles contended for by the defendant's counsel, all these laws are utterly void; for it is manifest that the precise originals are not to be found in the laws of any of the states. But this I apprehend is not the sound construction of the ordinance of 1787. The limitation which it imposed upon the legislative authority of the governor and judges was designed to secure to the people of the territories to which it applied a system of laws, each of which had been tried and approved of by the people of some one of the states. It was foreseen that the population of these territories would be composed of emigrants from the original states, who, as citizens of those states, had through their representatives in the state legislatures participated in the making of the laws, which by the ordinance in question, the governor and judges of the territories were authorized to adopt; this, together with the power reserved to congress of annulling such laws as they should disapprove of, was deemed a sufficient guaranty that the interests and wishes of the inhabitants would be regarded in the laws which would be imposed upon them. The object in view was one of substance, not of form. The phraseology of the adopted laws must undoubtedly be preserved in all essential respects, because a change of language might affect their construction ; but in the particulars which have already been adverted to, it is manifest that a literal transcript of any law would be an absurdity which never could have been contemplated or designed by congress. There is

ALBANY,
October, 1830.

Bank of Michigan
v.
Williams.

no force, therefore, in the objection to the act in question on this ground. The argument against the validity of this law, founded on the authority given by the ordinance to the legislature which might be subsequently organized, to alter such laws as the governor and judges might adopt, appears to me to be equally unsound. The same power was subsequently given to the governor and judges themselves by an act of congress passed the 8th May, 1792.

From the peculiar manner in which these laws were to be introduced into the territory, it was probably deemed expedient, in order to avoid all doubt or question upon the subject, to declare in express terms that they might be repealed or modified by the general assembly. But such authority, I apprehend, would of course have belonged to the legislature without any express provision upon the subject. The ordinance provides, that after the representative government shall have been organized, "The governor, legislative council and house of represetatives shall have authority to make laws in all cases, for the good government of the district, not repugnant to the principles and articles in this ordinance established and declared." A general authority to make laws necessarily implies a power to repeal or modify antecedent laws. This is a fundamental principle in legislation. It, of course, does not apply to that class of laws which are considered in the nature of contracts, or to those under which vested rights have been acquired. These are protected by other general principles of paramount, and, in this country, of universal authority; and I have no doubt that the power which is given in express terms to the legislature to alter the laws, was inserted from abundant caution, with reference to the peculiar nature of the case, and without any intention of conferring upon them any unusual or peculiar authority. But if it were otherwise, and it should be conceded that the legislature had authority under this provision of the ordinance to repeal or modify the charter of this bank, it would by no means follow that the governor and judges had no power to grant or adopt the act of incorporation. If such be the just construction of the ordinance, then the corporators and all others who have become interested in the institution, embarked in it with

legal knowledge of the tenure by which they held their rights, ALBANY, and they will have no ground for complaint if their charter October, 1830. should be modified or repealed.   If I mistake not, some of Bank of Mich-the acts of incorporation in this state contain an express igan reservation to the legislature of a right to alter or repeal them. Williams.
At all events, the existence of such a power does not prove that the act of incorporation was necessarily void.   The power given to the governor and judges is couched in broad and comprehensive terms :  " They shall adopt such laws of the original states, criminal and civil, as may be necessary and best suited to the circumstances of the district, and report them to congress from time to time," &c.   They of course, under the control of congress, must be the sole judges of what laws are necessary and best suited to the circumstances of the district.   That is a question into which neither this nor any other judicial tribunal has a right to enter.  . It is left to the sound discretion of the individuals who are entrusted with the legislative authority.   The fact that congress has not disapproved of the act, must, in the shape in which the question now arises, be deemed *conclusive* evidence that it is suited to the circumstances and wants of the district, and, I think, ought also to be considered *prima facie* evidence at least that it was adopted or passed by competent authority.   I am therefore of opinion that the government of Michigan had competent authority in December, 1817, to incorporate a banking company.

2. I understand the case as admitting that the printed law incorporating the Bank of Michigan is to be considered a part of the case, and to have the same effect as though it had been authenticated in the manner prescribed by the law of congress.   It was matter of arrangement upon the trial, and the case states the agreement as follows :  " It is agreed that the acts, laws and ordinances of the congress of the U. States relating to the said territory, *and the laws of the said territory* of Michigan which have been published by the authority of said territory, and also the act or law purporting to have been passed on the 19th day of December, 1817, entitled an act to incorporate the stockholders of the Bank of Michigan, shall be considered as forming a part of this case ; and that

they may be referred to from the book in ordinary use, on the argument of this cause." If they are to be considered as forming a part of the case, they are certainly to be considered as having been duly proved. The evidence was *prima facie* sufficient to shew that the plaintiffs were a body corporate. The giving of the note on which the suit is brought, together with admissions of the defendant that he had been the president of this bank, shew that it had been actually in operation, doing business as a banking institution. This, in connection with the act of incorporation duly authenticated or admitted, sufficiently establishes the corporate character of the plaintiffs. *Wood* v. *The Jefferson County Bank,* 9 *Cowen,* 194. *Utica Ins. Co.* v. *Tillman,* 1 *Wendell,* 555. *Same* v. *Cadwell,* 3 *id.* 296. A corporation may be proved by an exemplification of the act of incorporation and acts of *user* under it.

If these views of the case are correct, the plaintiffs are entitled to judgment, and it becomes unnecessary to consider whether the defendant is estopped by his acts and admissions from denying their legal corporate existence or not. I shall therefore not enter into a discussion of that question.

The plaintiffs are entitled to judgment.