The Court
(Thruston, J.,
contrd,) was of opinion that the statute was applicable to every branch of medicine and surgery.
Mr. Brent, for the defendant, having contended that the charter of the medical society had been surrendered, or abandoned, and the society dissolved, obtained a rule to show cause why an information in the nature of a writ of quo xoarranto should not be filed to try the question, and it was agreed that it should be heard as part of the present case.
The counsel for the United States contended that such an information cannot be issued at the suit of an individual alone. 2 Kent’s Com; 313; Angell & Ames on Corp. 473; Commonwealth v. Union Insurance Co., 5 Mass. Rep. 230; Wallace v. Anderson, 5 Wheat. 291; Angell & Ames, 76, 77, 470. The government may waive the forfeiture. And a judgment of forfeiture now entered would not relate back to the time of the defendant’s practice.
Mr. Brent, Jun., admitted that on the ground of abuse there can be no quo warranto without leave of the government, but for non-user there may. There is a difference between declaring a forfeiture of the charter and the non-existence of the corporation. They do not pray the Court to dissolve the charter, but to declare it dissolved. They cannot kill the corporation without a quo xoaxranto, but may show it to be dead, and a surrender may be presumed from the non-user. Slee v. Bloom, 19 Johnson, 456.
Mr. John R. Key, in reply. A mis-user, or non-user, does not destroy the charter.
The Court (Morsell, J., contrd,) refused to permit the information to be filed; but decided (Cranch, C. J., contrd,) that it is *66 competent for the defendant to show in this trial that the charter was vacated.
The grand jury having, during the trial, brought in two more indictments against the defendant, the petit jury was, by consent, sworn upon them also.
One of them contained five counts, all charging the defendant with fraud, in obtaining money by false pretences.
1. The first charged that the defendant, being an evil-disposed person and common cheat, did fraudulently personate a certain John Williams, who had been known and esteemed as a doctor of medicine and oculist, and who had deservedly acquired great reputation for his learning and skill, intending to deceive and defraud the good people of the United States, in the county of Washington, in the District of Columbia, and more particularly one Samuel Peach, of his moneys, and by such false pretence, unlawfully, knowingly, and deceitfully obtained from him a large sum of money, to wit, the sum of fifty dollars, with intent to cheat and defraud, and did then and there cheat and defraud the said Samuel Peach of the same, &c.
2. The second count charged that the defendant, being an evil-disposed person and a common cheat, as aforesaid, and contriving and intending unlawfully, fraudulently, and deceitfully to cheat and defraud a certain Samuel Peach of his moneys, did knowingly, fraudulently, and falsely pretend to the said Samuel Peach that he, the said John Williams, (the defendant,) was a doctor of medicine and an oculist, whereas in truth and in fact the said John Williams was not then a doctor of medicine, and was not an oculist, as he did then and there so falsely pretend to the said Samuel Peach; by which false pretences he then and there unlawfully, knowingly, and deceitfully obtained from the said Samuel Peach a large sum of money, to wit, the sum of fifty dollars, with intent then and there to cheat and defraud, and did, then and there, thereby cheat and defraud the said Samuel Peach of the same.
3. The third count charged that the defendant, being an evil-disposed person and common cheat, with intent, &c., as aforesaid, did knowingly, fraudulently, and falsely pretend to the said Samuel Peach that he, the defendant, was a person well skilled in curing the diseases of the eyes, and that he could cure the disease then existing in the eyes of Mary Ellen Peach, daughter of the said Samuel Peach ; whereas in truth and in fact the said John Williams was not a person well skilled, &c.; and could not cure the disease then existing in the eyes of the said Mary Ellen, as he so falsely pretended; by which false pretences last aforesaid the defendant did unlawfully, &c., obtain from the said *67 Samuel Peach a large sum of money, to wit, the sum of fifty dollars, with intent then and there to cheat and defraud, and did then and there cheat and defraud the said Samuel Peach of the same.
4. The fourth count was for cheating the said Samuel Peach of fifty dollars, by pretending to give advice and medicine that would cure the disease of his daughter’s eyes, whereas, &c.
5. The fifth count was for cheating Peach of fifty dollars, under the false,pretence that the defendant was an oculist, and was competent to give, and for fifty dollars to be advanced, would give advice and medicines fit and properto be administered to cure the disease of his daughter’s eyes, and by such false pretence prevailed on Peach to pay him the sum of fifty dollars; whereas in truth and in fact he was not an oculist, and was not competent to give and did not give such advice and medicines; but the advice and medicines which he did give were unfit and improper, &c.
The other new indictment, brought, in by the grand jury charged that the defendant publicly and falsely pretended that he was an oculist, and offered himself to the good people of the United States in the county of Washington, to be consulted and employed in diseases of the eyes, and was by great numbers ‘ of people so consulted and employed ; and did offer and sell to divers, to wit, fifty of the said good people, for large sums of money, for his own wicked gain, unlawfully, fraudulently, and deceitfully, certain prescriptions and medicines, falsely pretended by him to be remedies for certain diseases of the eyes, with which the said persons were then and there afflicted, as good and proper remedies for the said diseases, and did so offer and sell and deliver, among others, to Samuel Peach, John Mitchell, Samuel Carr, and Joseph S. Wilson, the said pretended prescriptions and medicines as good and proper remedies, &c., whereas in truth and in fact the said prescriptions and medicines were not good and proper, &tc., but unfit and improper, &c., and were well known to the said John Williams not to be good and proper, &c., but unfit and improper; by means of which said false pretences the said good people so consulting and employing the said John Williams, and the said persons so hereinbefore named as aforesaid, were cheated and defrauded of large sums of money, &c.
Mr. Key, for the United States, produced a release by the Medical Society to Rowland the informer, of all the society’s interest in' the penalty; and then offered to examine as a witness, Doct. Sewall, one of the members of the society.
The Couet, (nem. con.) was of opinion that Doct. Sewall was a competent witness in the trial of the issue upon the two *68 last indictments, but not in the prosecution for practising without a license, inasmuch as the Court, ( Ceancii, C. J. dissenting) had decided that it was competent for the defendant to show, in his defence, that the charter was vacated by the non-user.
Mr. it. J. Brent, for the defendant, prayed the Court to instruct the jury, that if they should believe from the evidence that the board of examiners, acting at the time of the alleged offence, was not elected upon the first Monday of January, 1836 ; or if, for the last several years the said Board has been annually elected, and not constituted by filling vacancies in the same from time to time, as they occurred; or if the times and places for the meeting of the said acting board, were not fixed by the said supposed society, or if the acting president, secretary, and treasurer, (or either of them, were not elected upon the first Monday of January, 1836, then the said board of examiners were not authorized (dejure) bylaw to grant licenses, and the traverser is entitled to a verdict of acquittal.
And also, if the jury .should find from the evidence, that the officers of the supposed medical society, were not elected by seven members present on the first Monday of January, 1836, as directed by the charter, the said medical society was not in operation, and the defendant is entitled to a verdict of acquittal.
And also, if the jury believe from the evidence that from the date of the charter up to the year 1834, there was no medical board elected by at least seven members of the said society, then the right to elect the said medical board, no longer existed in law, and all subsequent elections of said board were illegal and void; and, by consequence, could not authorize them to grant licenses, and the defendant is therefore entitled to a verdict.
And also, if the jury believe from the evidence that the election of the different officers of the medical society was not made by at least seven members present, as directed by the charter, on the second Monday of March, 1819, and on the annual meeting in January, from that time to the first Monday of January, 1836, inclusive, then the defendant is entitled to a verdict of acquittal, also, if the jury believe that a resolution was passed by the said supposed society, to pay the debts of the said society, and to divide the funds; and that a division of said funds actually took place, and that for several years there were no operations whatsoever of the said society; and that members of the said society declared they had abandoned it, and considered it dissolved, then the jury may presume a surrender of the said charter, and the defendant is entitled to a verdict of acquittal.
Mr. Brent contended that by the neglect to choose its officers annually, the society is extinct de juré. 2 Kent’s Com. 295. *69 The case of the Corporation of Banbury, 10 Mod. 346; The King v. Pasmore, 3 T. R. 238; Stat. 11 G. 1, e. 4.
The old officers could not hold over after the'year. If it were a principle of the common law that they could, the statute of 11 G. 1, c. 4, would not have been necessary. State v.Wayman, 2 Gill & Johns. 278; Phillips v. Wickam, 1 Paige, Chanc. Rep. 590, confirms 10 Mod. 346; The King v. The Mayor and Burgesses of Tregenny, 8 Mod. 127.
That there was no board of examiners de jure. The board was not, by the charter, to-be chosen annually, but to be kept alive by filling vacancies as often as they should occur. See the 7th section of the charter. See also Foote v. Prowse, Mayor of Truro, 1 Str. 625; Hall v. Gough, 1 Har. & Johns, 122; Bank of Michigan v. Williams, 5 Wendell, 478; The King v. Hughes, 4 B. & C. 368, 377, 378; Symmers v. Regem, Cowp. 507; Rex v. Mein, 3 T. R. 598; Rex v. Hebden, 2 Str. 1109; S. C. Andr. 388; Rex v. Grimes, 5 Burr. 2601; Rex v. Peacock, 4 T. R. 686, per Ashhurst, J.; Anon. 1 Barnard, 345; and Angell & Ames on Corp. 76, 77.
That it was incumbent on the society to fix the .times and places for the meetings of the board of examiners, and to fill up vacancies in the board.
That there is no evidence of a user of the corporate rights until 1834; no minutes of their proceedings; no lawful president to sign the licences; no notice of meetings; but there is evidence of their breach of trust in dividing among the individual members the corporate funds, which by the charter they were to apply exclusively to the promotion of medical and surgical knowledge. They are bound to show their authority, and must be strictly confined to their charter. 2 Kent, Com. 299.
Mr. John R. Key, contra. Now, user or mis-user is not a dissolution of the corporation. It can only be dissolved by a proceeding against the corporation itself. 2 Kent, Com. 312; 1 Bl. Com. 485 ; Bac. Ab. Corp. 3. Even a forfeiture is not a dissolution until a judgment is pronounced, and all its acts, up to that time are valid. And the judgment must be upon a scire facias, or a quo warranto. The dissolution of a corporation can not be inquired into and ascertained collaterally in a suit against others. United States v. Amedy, 10 Wheat. 392; Bac. Ab. Corp. E. or G.
Thruston, J., and Morsell, J., being of opinion against Mr. Key on that point, he said he would abandon it. But he contended that the corporation was, in fact, still in existence de jure and defacto, until a judgment against it. 2 Kent, 310; Slee v. Bloom, 19 Johns. 456; Rockville Turnpike Company v. Van Ness, *70 in this Court, (2 Cranch, C. C. 449); Mechanics’ Bank v. Minor; also in this Court, ante. As to annual election of officers, Mr. Key cited 2 Kent, 295.
The Court neither refused nor granted the instructions prayed by Mr. Brent, but, (C:ranch, C. J., contra:,) instructed the jury, that if they should be of opinion from the evidence, that at the time when, &c., there was no board of examiners de jure, the defendant is not guilty under the statute, and that if they should be satisfied by the evidence, that the board was not elected and continued by filling up vacancies, &e., but was, for the last two or three years, elected annually, &c., then there was no legal board of examiners, &e.
Morsell, J.,
expressed an opinion that the prosecution was not sustained. That the indictment ought to have averred that there was such a corporation; that the board of examiners was appointed by at least seven of the members; and that the United States must show that the officers were duly appointed; and that although the minutes of the proceedings of the board were lost, yet the United States must prove their contents; and must show that, at the time when, &c., there was a competent board of examiners de jure. And that “if the jury find from the evidence that the election of the board of examiners was by a less number than seven members of said association; that then there was a neglect to elect an integral part of said corporation, and that it was thereby entirely incapable of performing the principal purpose for which the charter was granted, that they could not so restore their power as to make any subsequent legal election of said board of examiners; and that even if it amounts not to a forfeiture, yet by a consequence of law, said corporation is dead; and that if such was the state of this (society) at the time of the offence committed, as charged in the indictment, then they ought to find the traverser not guilty.”
He said also that he was willing to give the jury the following instruction: “ If the jury believe from the evidence that the medical association omitted intentionally to elect the president, vice-president, secretary, and treasurer of the said society for several years after the organization of the society, at the times directed by the charter, and neglected to fill up the vacancies which occurred in the said medical board; and that one or more of the members of the said association withdrew themselves therefrom, declaring that they considered the said corporation as dissolved; and, further, that the said association determined, by resolve of the board, to divide the property and effects of the said society among the individual members thereof; that then the jury may find that there was a surrender of the corpo *71 rate franchises and privileges of said society, and that the said corporation was dissolved. And if the aforegoing state of things existed, at the time charged in the said indictments when the offence was committed, they ought to find the traverser not guilty.”
In this opinion, ThRüston, J., seemed to acquiesce, and added that in his opinion the society, by its charter, was only authorized to license students, and those who were about to commence the practice, not those already in the practice.
In consequence of this opinion of the Court, Mr. John R. Key, in opening his argument to the jury upon the evidence, said he should abandon the prosecution for practising without license, but not on the ground of defect of evidence. The jury after being out two days and one night, returned with a verdict of acquittal upon all the indictments.