By the Court. Hoffman, J.
On the 20th of February} 1849, the defendant sold to the plaintiff fourteen hundred pieces •of lawns, each piece containing twenty-four, yards or there¡abouts, making in all thirty-three thousand six hundred yards, :at the price of eleven cents a yard, amounting to the sum of t$3,396. The sum of $53 was admitted as a proper deduction. *423 The lawns were packed in fourteen bales. The sale was upon eight months’ credit. The action is for the price of the goods.
The defence was that the goods were sold by samples, the defendants representing such samples to be fair specimens of the fourteen bales, and upon the faith of such statements the purchase was made. That the bales were not exhibited, nor were they accessible for examination. That- the samples and representations were of sound, merchantable lawns; and that when examined subsequently to the delivery, they were found to be tender, rotten, and decayed, and that by reason thereof they were worth the sum of $1,700 less than they would have; been worth if they had corresponded with the samples. This sum was claimed as a deduction from the price.
The goods arrived in Kew York in January, 1849. The invoice was of twenty-five bales. Two or three bales were taken, to the plaintiff’s, store, and the rest sent to the United States Bonded "Warehouse. The samples were not taken from the-bales, but came out separately in the vessel, or a previous steamer. Eno, one of the defendants, saw the two bales at the store, and also the samples on the 19th of February, 1849. On the 20th the sale was completed, and the fourteen bales sent to the defendants’ store on that day. They came in the original packages, covered with canvas, perhaps with iron bands.
The defendants’ witnesses prove that it was four or five weeks after the delivery that the goods were discovered to be tender; that after the discovery of the damage the defendants went on selling the goods at private sale. The residue of the goods were sold at auction. It is not precisely ascertained how many went to auction, nor, of course, what were sold at private sale. One of the witnesses says, perhaps a third, perhaps more or less. The bales were opened as they wanted them to sell, and were sold by the piece. The most distinct and certain of the testimony to this point is that of Peck, who states, that, on the 10th of April, there were eight or ten bales at the store of the defendants.
The parcel which was sent to auction produced eight and a half to eight and three-quarter cents a yard. This was on the 20th of April. There is testimony to show that the value of the. sound article, at that time, was from nine to nine and a *424 half cents. The jury made an allowance for damage, which seems to have been founded upon this basis. The amount deducted was $197.87, and the most plausible theory is that it was arrived at upon this view of the case.
The verdict, then, was upon the ground that the sale by sample was accompanied with such circumstances as amounted to an implied warranty that the goods corresponded with the samples. There is no objection to the ruling of the judge on this point, and the principle of the case, in the Court of Appeals, of Hargous v. Stone (1 Seld. 13), and Reine v. Dodd (Ib. 98), is satisfied. The jury were left to find, and have found, that the parties mutually understood that they were dealing with the sample, as an agreement or understanding, that the bulk of the commodity corresponded with it; that the sale was intend? ed, as matter of fact, to be a sale by sample.
This being established, the principal remaining questions are, first, whether the defendants had not, in fact, waived a right to claim a deduction for damages; and next, what was the amount of the damages sustained, and what was the true rule for estimating them.
On the latter question the ruling of the court has been made the subject of numerous exceptions, and as to one of them, viz. the exclusion of an estimate made by Peck & Chambers of the damage, upon a partial inspection, from the consideration of the jury, some doubt is entertained by one of the court. But the view of the case, in which we concur, dispenses with the decision of this exception.
We consider the point taken by the plaintiff, that there had been such an acceptance and retainer of the goods, as to waive this claim, as decisive of the case. The judgment for the whole amount of the contract price, without even the deduction which the jury made, could have been securely placed upon this ground. The defendants have furnished the testimony to establish it, and it is wholly immaterial whether any or what errors were committed by the judge upon other points. Ho new trial, ordered by reason of any such errors, can result, upon legal principles applied to ascertained facts, in a different verdict ; or rather must result in a verdict less favorable to the defendants.
*425 The defendants received the goods into their own store on the 20th of February, 1849. They proceeded to sell them in pieces, opening the bales as a demand arose. It was about the 20th of March, when, as they state, they discovered the damage. They continued still to sell at private sale. About the 5th of April, they, for the first time, took the ground of the damage being such as to require that the plaintiff should take back the unsold goods, and make an allowance for the damages which the purchasers might claim from them, and they be bound to make good. This is the position assumed in their letter of the 6th of April, 1849.
Whether the rule adopted in the Superior Court, and borrowed from the civil law, or that of the Court of Appeals, is the one best founded in mercantile policy, and high-toned equity, cannot vary this question now raised. Whether the implied warranty arises from the sample alone, or from the sample strengthened by evidence, to show the intent of the parties to make it the absolute representation of eorrresponding quality, the rule must be the same, which requires a prompt examination after delivery of the articles, and a prompt announcement of the ground which the purchaser means to assume.
In a mercantile community nothing can be more essential for the liquidation of accounts, the preservation of evidence, and the facility of adjudication, than that any implication of warranty, attached to a purchase of goods, should endure no longer than is reasonably necessary for the examination of the articles. It is upon this principle, that it has been decided in England, that a warranty ceases if the purchaser has shipped the goods out of the realm. This proposition is recognised in Vanderhost v. McTaggart (1 Br. R. 269). It is a result which follows from the cases of Salisbury v. Steiner (19 Wend. 160), and Sprague v. Blade (20 Wend. 60). If the opportunity to inspect goods before a sale is completed nullifies the implication of a warranty arising upon sample or otherwise, certainly the full opportunity of examining them after delivery, and after an actual sale of a part, must discharge the implied warranty.
It is certainly true that the observations of Chancellor Wal worth in Waring v. Mason (18 Wend. 435) as to the unreason *426 ableness of requiring an examination of bales of cotton purchased here, but for shipment abroad, are striking and just. But that reasoning wholly fails in its application to the present case. The article, in question, was to be used and sold here, and some bales were actually opened as the sales proceeded.
To the authorities above referred to may be added Hyatt v. Boyle (5 Gill. J. 110), Carnochan v. Gould (1 Bail. 179).
The only answer which can be given to this view of the case arises from the alleged consent of the plaintiff, through Heilburth, as Ms agent, to a valuation and admission of a liability for a loss. The testimony, however, establishes merely, that Heilburth was sent by Muller to ascertain on what ground the defendants complained ; that he examined a few pieces, and admitted there was some damage done. But he did not unite. in any estimate, and insisted that too much time had elapsed; a position which neither he nor the plaintiff has ever abandoned.
One other point in the cause requires notice. The evidence of any complaint from any one of the purchasers as to the quality of the goods is very slight. There is none whatever of a demand persisted in for an abatement of the price; much less of any payment. The case, on the ground of reclamations, entirely fails..
There must be a judgment for plaintiff with costs.