Hoffman, J.—
First, If there was not a warranty of the quality or value of the articles, and no fraud was practised by the plaintiffs or their agent, the claim for an abatement will be wholly unfounded. The contract of sale was made through Camp, the agent, about ten days before the 8th of April, 1856. On the day following the contract, a portion of the cutlery, which was then in New York, was delivered to the defendant. By the 8th of April, the whole was delivered, with an invoice or list fully made out, and of which a copy is annexed to the complaint. About the 8th or 9th of April, this invoice, or bill, was inspected by the defendants, or one of them. Objections were made to certain articles; there was an offer by the agent for a deduction respecting them; the defendants were then requested to examine the bill as soon as they could; one of them said that it would take two or three weeks to do so. The agent requested them to examine, and if any thing was wrong, to write to the Eagle Works immediately. The address was given; no communication was made by the defendants to the plaintiffs. On the 9th of December, 1856, the credit having expired, the plaintiffs wrote to the defendants, that the bill had fallen due, and they presumed it had been found correct, as they had not heard to the contrary. They forwarded a draft for the amount, which was dishonored.
*170 In the interim, the goods had been shelved by the defendants and exhibited for sale, and after the defendant, Churchill, knew of their condition. They have been since transferred to other parties.
It would be unjustifiable to allow the defendants to rest for eight months without complaint or action, especially when they were invited to make their objections, and now to insist upon an abatement from the stipulated price, (Muller v. Eno, 3 Duer, 421.)
We are of opinion that there was no warranty of the articles, and no fraud practised in the sale. The agent distinctly apprised the defendants that he had made out the list from an old invoice; that it might vary from the true amount and value of the goods, but not substantially. The defendants chaffered to increase the discount, on the ground that it was a job-lot of goods they were purchasing.
2d. But an objection is taken, that the plaintiffs, a foreign corporation, have not established their capacity to sue.
The evidence is this:—
Moses Camp, a witness for the plaintiffs, swears, that the plaintiffs are a corporation, incorporated under the laws of Connecticut. The defendants objected to this mode of proof. The question was reserved. He also proved that it originated five years ago, and that the organization was still kept up.
The plaintiffs also produced in evidence, extracts from a book purporting to be the Revised Statutes of Connecticut of 1854, and from chapter 14 of such statutes. It was agreed, that these extracts, and the statute, might be read from the printed volume.
The Act, under which the plaintiffs claim to have been organized, was passed in 1837. It is found in the Revision of 1849, to which we have been referred. The Revised Laws of 1854 were also produced in evidence, and do not differ, in the sections relied upon, from the former provisions.
Under these provisions, the articles of association produced, and admitted to be genuine, were entered into; dated the 4th of November, 1851.
By another document, it is certified, that The Eagle Works was a joint stock corporation, formed under the laws of Connecticut, on the 4th of November, 1851, to manufacture cutlery, etc., with *171 a named capital, divided into eight hundred shares of $25 each; that the stock had been subscribed for, by the persons named, in the shares and amounts specified. The stock was to be called in as the board should direct. This was signed by three directors and the president, on the 9th of January, 1852; was sworn to, and was received and recorded, January, 10, 1852, by John C. Mather, Secretary of State.
Certificates, sworn to by the president and three directors, are then annexed to the document, showing successive payments of the three instalments of twenty-five per cent. each.
These documents and certificates are attested and authenticated, by the Secretary of State of Connecticut, under the seal of the State, on the 13th of April, 1857.
From the case of The Welland Canal Co. v. Hathaway, (8 Wend. 480,) and the cases cited, I conclude, that the evidence of the corporation, which would be sufficient in Connecticut, will be sufficient here; except, perhaps, that a public statute must be proven as a fact. The admission to read it from the statute book dispensed with this. “ A copy of the charter properly authenticated, should be produced.”—Nelson, Justice, in the case above cited.
But when an association becomes incorporated under a general Act, something must be proven to show its organization. A certificate, authenticated by the seal of the State, and apparently conformable to the public Act, must be sufficient.
It is clear, that no subsequent faults or omissions which would work a forfeiture, can be made available to defeat this action, if the corporation was once legally constituted.
In Caryl v. McElrath, (3 Sandf. S. C. Rep. 176,) it was stated, that the Court would have probably held, had it been necessary, that the company, having claimed to be organized, and having acted as a corporation, the question of its actual existence was to be tested by the government, and not by parties -who had dealt with it.
The objections of the defendants, to the evidence adduced, are, that neither the proof of the preliminary meeting, prescribed in section 199, nor of the advertisement, with a copy of the articles, directed by section 210 to be published, has been made.
As to the first objection, the authorities cited by Mr. Angell, *172 (on Corporations, § 638,) are express to the point, that corporations cannot be compelled, at a distant day, to produce the advertisement calling the meeting which organized them. (See, also, 5 Wendell, 478 ; 10 Johnson, 167.)
This rule is equally applicable to the other objection.
But, besides, a section of the statute, added in 1854, enacts, that a certified copy, by the Secretary of State, under the seal of the State, of the certificate of the president and directors, deposited in his office, for record, of the purposes for which the company was formed, etc., shall be received as sufficient prima fade evidence of the due formation, existence and capacity of such corporations in any suit.
It is again urged, that the 212th section provides, for annual returns to be made, by certificates, of the situation of the company, comprising various particulars, and that this has been neglected in many particulars. Without comparing the certificates produced with the requisitions of the section, we are satisfied that the objection cannot prevail in this action, even if well founded in fact.
The judgment should be affirmed, with costs.
Boswobth, J.
The articles of association, dated November 4, 1851, admitted to be genuine, and conforming to the statute laws of Connecticut, were received in evidence. By them, the subscribers thereto, and who had subscribed for the whole of its capital stock, declare that, “we do hereby associate ourselves as a body politic and corporate,” pursuant to such statute, and that the corporate name shall be, “ The Eagle Works.” The statutes themselves were duly proved and read in evidence. These statutes and these articles are the charter, or act of incorporation. Acts of user, under it, down to the time of the trial, were proved. Certificates of the payment of three several instalments of the capital stock, verified and recorded as such statutes prescribe, and certified in proper form by the Secretary of State, under his seal of office, were read in evidence. This evidence, as a whole, was objected to as “incompetent and insufficient.” No grounds of incompetency, or particulars of insufficiency, were pointed out. The statute was competent and sufficient evidence of its contents. It was agreed, that it might be read from the printed book. The *173 articles of association produced, being admitted to be genuine, and conforming to the statute, were admissible. Under such a general objection, all the documents were properly admitted, and the only question, on this point, is, do they furnish prima fade evidence that the plaintiff is a corporate body. The production of • the Act of incorporation, and proof of such Acts of user under it, and of its continuing to act as a corporation, are prima facie, sufficient. Bank of Michigan v. Williams, (5 Wend. 478) and cases cited in the opinion of the Court. I think there is no error in the other decisions of the referee, and that the judgment should be affirmed.
Judgment affirmed.